*EXHIBIT A*

# PETITION FOR REVIEW OF OKLAHOMA BOARD OF BAR EXAMINERS DENIAL OF PETITION FOR CLERICAL ERROR

Whereas the Oklahoma Board of Bar Examiners (hereafter referred to as OKBBE) is a quasi-agency, that is, a governmental agency operating within the State of Oklahoma created by the Supreme Court as an arm of the judicial branch pursuant to Title 5 O.S. § 1 to further regulate the legal profession, I, Reagan Berry Poteet, am respectfully seeking the Supreme Court of Oklahoma to review the agency's final order rendered against me. Pursuant to Article VII, § 4 of the Oklahoma Constitution, the Oklahoma Supreme Court has original jurisdiction over appeals from any final disposition of the OKBBE regarding an applicant for admission to the Oklahoma Bar Association. Therefore, I humbly request that the final order of the OKBBE be reversed, ideally in the form of a regrade or a grant of admission given the clear and convincing evidence of my original clerical error petition presented to the OKBBE.

Pursuant to Title 5 O.S. § 3 and Rule 12 of the Rules Governing Admission promulgated by the OKBBE, and wherefore such rulemaking authority was delegated to the agency by the Court, Rule 12 directly states: "In determining the right of any applicant to admission, the Board of Bar Examiners *shall* have the power to make such independent investigation and require such additional showing as it may deem proper and it *shall* take into consideration in determining the right of the applicant to admission, such facts as it may have ascertained in such investigation." Therefore, according to the Oklahoma Statutes, the OKBBE has been delegated the express authority to make rules governing the admission to practice law. This prescribed rule, adopted under the rule-making authority which was vested in the OKBBE directly by the Supreme Court of Oklahoma, clearly states that the OKBBE shall investigate matters in relation to determining the right of any applicant to admission to the Oklahoma Bar Association–such as a clerical error,

1

which I claimed likely occurred in my case and supported by anecdotal, circumstantial, and empirical evidence–all of which was disregarded by the OKBBE. Despite this evidence and the language of "shall" found in Rule 12 which indicates an arguable mandatory duty, no action was taken. This failure to act constitutes an arbitrary and capricious abuse of discretion in light of the substantial and corroborated evidence presented to the governmental body, which is to be operating at the pleasure of the citizens of the great State of Oklahoma. These citizens depend on the transparency, legitimacy, and fairness of the process governing who is afforded the privilege to practice law within the State of Oklahoma.

    Notwithstanding this fact, there is no explicit rule within the Rules Governing Admission promulgated by the OKBBE that addresses discretionary clerical error petitions. This creates ambiguity regarding the scope of the agency's authority within the context of Rule 12 which must be dealt with using the only rational method to make such a determination: judicial review. While the OKBBE is not a traditional executive-branch agency and is not directly subject to the Oklahoma Administrative Procedure Act, it functions in many of the same ways. It promulgates rules, makes policy, regulates a specific professional field, and renders decisions in individual proceedings such as exam scores and final orders–such as in my case. Therefore, I would respectfully submit that, as a quasi-agency operating as an arm of the Oklahoma judicial branch, the statutory scheme and principles embodied in the Oklahoma Administrative Procedure Act are relevant and instructive here. Simply because the OKBBE is not a literal executive agency does not mean that they should be treated differently with respect to judicial deference.

    Therefore, pursuant to the Oklahoma Administrative Procedure Act, Title 75 O.S. § 318, final orders of governmental agencies within the State of Oklahoma are subject to review, modification, remand, or reversal as a matter of appellate rights of a petitioner. Furthermore,

pursuant to Title 75 O.S. § 320 an agency or, I would especially argue, a quasi-agency that is tasked with governing the admission process to an organization that performs a most critical function within our society, the legal profession, must not act in an arbitrary or capricious manner and abuse their discretion in rendering a final agency order, or otherwise, as it relates to an applicant for admission to practice law in the State of Oklahoma. That being the case, I am humbly, respectfully, and earnestly petitioning the Supreme Court of Oklahoma to reverse the final order rendered against me that is both an abuse of discretion and thereby arbitrary and capricious.

## STATEMENT OF JURISDICTION

1) Pursuant to Article VII, § 4 of the Oklahoma Constitution, the Supreme Court of Oklahoma possesses original jurisdiction over appeals from any final disposition of the OKBBE regarding an applicant for admission to the Oklahoma Bar Association.

2) Whereas the OKBBE is a body created by the Supreme Court of Oklahoma pursuant to Title 5 O.S. § 1, and operates under the Court's supervision, the Supreme Court retains ultimate authority over all actions and decisions of the Board.

3) Pursuant the Title 5 O.S. § 3, the Supreme Court of Oklahoma delegated authority to the OKBBE to promulgate Rules Governing Admission for applicants to the Oklahoma Bar Association.

## INTRODUCTION

My name is Reagan Berry Poteet. I am a Juris Doctor who graduated from Oklahoma City University School of Law in May of this year, an alumnus of Pepperdine University, and a

proud Eagle Scout. I view it as incumbent upon me as a lawyer and future attorney, to stand up for truth and to not keep quiet when things are not as they should be. Feigning ignorance or purporting not to care about upholding the truth should be unacceptable to all parties involved who have been tasked with the sacred privilege of being officers of the court. Attorneys are held to the highest ethical standards imaginable as leaders in our communities and in our country writ large. Attorneys, and the organization which they all report to, are duty-bound to be the highest-caliber citizens of a State and indeed our country. By denying my petition and giving no reason as to why "no action was taken" despite a plethora of evidence to the contrary, the OKBBE has simultaneously acted arbitrarily and capriciously and abused their discretion in denying my petition for a clerical error.

## STATEMENT OF FACTS

On September 25, 2025, I sent an overnight letter to the Oklahoma Board of Bar Examiners. I did so to get resolution on what I viewed as something that was clearly erroneous, and incomprehensible as it pertains to my overall score on the Bar Exam and particularly my writing score. I petitioned the OKBBE to investigate whether there was a clerical error, and if so to grant a regrade in an exceptional, but not unprecedented scenario as this has occurred many times in other states due to the many problems that have plagued the exam software known as ExamSoft. In fact, in 2014, there was a widespread Bar Exam failure which showcased ExamSoft's utter failure in which 43 states were unable to upload their completed essay exams using ExamSoft's software. See, *Amanda West, et al. v. ExamSoft Worldwide Inc.* dubbed as 'Barmageddon'.[1] This is the exact same company that operates the Bar Exam in Oklahoma.

---

[1] *Amanda West, et al. v. ExamSoft Worldwide Inc*

4

Additionally, there were many reported issues with the software in 2020 and 2021 during the pandemic in which there were crashes and connectivity problems. An independent investigation of the State Bar of California found that approximately 31% of test-takers experienced technical issues during the July 2021 exam with up to 2% losing time and even answers. Furthermore, as recent as 2025 there were several class action lawsuits filed regarding the Bar Exam software known as Meazure which resulted in exam scores being altered and those who were wrongly failed were admitted by the State Bar of California. See, *Perjanik et al v. ProctorU, Inc.* See also, *The State Bar of California v. ProctorU, Inc., d/b/a Meazure Learning.* ProctorU.[2] Now referred to as Meazure learning, ProctorU has partnered with ExamSoft showing that the two systems are likely subject to similar issues given their partnership. "Reuters stated on January 31st of 2025 the revamped Bar Exam set to debut in July 2026 won't rely on ExamSoft – the testing platform that has suffered a series of tech problems over the years. The NCBE says that it has replaced ExamSoft, the platform most states use for the current exam with different testing software for the NextGen Bar Exam."[3] I believe wholeheartedly this was probably the case in my situation and my evidence supported this assertion.

In short, I wanted to make sure, as any concerned examinee should, that my true score was correctly attributed to me, whether there was an upload error, whether there was a scaling error, printing error, or whether any foreseeable error occurred which would prejudice my admission as an applicant to the Oklahoma Bar Association. To provide vital context, this past exam cycle 76% of those students who took the Bar Exam, passed the Bar Exam in July. My

---

[2] *Perjanik et al v. ProctorU, Inc., The State Bar of California v. ProctorU, Inc., d/b/a Meazure Learning.* ProctorU
[3] Karen Sloan, *New Bar Exam developers*, Reuters.com. Feb 6, 2024, https://www.reuters.com/legal/transactional/new-bar-exam-developers-ditch-problem-plagued-examsoft-platform-2024-01-31/.

5

alma mater, Oklahoma City University School of Law tracked with this overall pass rate at the same percentage of 76%. I scored a 117.8, scaled score out of 200 on the written portion of the exam. This would indicate that my raw scores were roughly an average of 2.6/6 on each essay out of the 8 total tasks on the written section of the exam; that indicates that they were borderline incoherent and brazenly inadequate. This is untenable when one considers the standardized NCBE rubric, and the quality of my exam essays in relation to the rubric once they were reviewed by myself, a renowned expert at bar essay grading, and thorough AI analysis. I address this at length in my original petition which I will be including in this Petition for Review for your reference.

The question for you is certainly why this matters so much to me or why you should give this any consideration when, on its face, it does not seem alarming that someone purportedly failed the Bar Exam as many people do. Why it matters is precisely for this reason: if there is a process that is being upheld in which qualified applicants are not admitted due to a grading system that is not uniform for each examinee, or likely clerical errors are completely ignored with no consideration whatsoever despite clear and convincing evidence to the contrary, this is a system that is not functioning properly or according to the values on which our great nation was established. Namely, one that upholds republican values and the flourishing of individual liberty over blind deference to bureaucratic processes.

When one considers the likelihood of fallibility and human error, the pattern of consistent errors across the country in Bar Exam scores, and that exams are uploaded via Wi-Fi within the context of ExamSoft software, my petition should have at least been investigated and, in truth, granted for the Board to not have abused their discretion bestowed upon them by the Supreme Court, not to be in violation of the Oklahoma Administrative Procedure Act, and arguably not to

6

be in violation of the 14th Amendment's federal due process if their internal process does not meet the national standard. To be treated as unworthy of even cursory consideration by the OKBBE is not indicative of the apex of ethical standards the legal profession demands as a self-regulating profession.

To continue, I submitted my letter overnight on the 25th of September, and they received it the next day at approximately 9:00 AM. I did not hear back regarding my letter for nearly two weeks. After which, on October 9th, I hesitantly called and was told that the OKBBE indeed had my letter despite no acknowledgment or any confirmation of receipt, and that they "might do nothing with it". To be sure, I had been warned that this was standard operating procedure, but I was still surprised. On the morning of the 16th of October, I reached out to the Director again and was told that the Board would be meeting that week and "expected to have something by the end of the week". Subsequently, on the following Tuesday October the 21st, I was informed that "the OKBBE decided to take no action" on my petition with no reason given as to why they reached this decision at all. The decision took the form of a one-sentence deeply impersonal email.

To further bolster my argument, I submit the following facts to a candid world: I scored a near perfect score on my SAT writing before being admitted to Pepperdine University on a full academic scholarship. I then later worked in a congressional office in Washington, D.C., at the Longworth building where I regularly prepared speech language and provided support for congressional staff. I never once scored 2s or a low 3 on any of my practice essays under the tutelage of Professor Steven Foster at OCU where I took a year-long bar preparation course, did early bar preparation, and took actual bar preparation extremely seriously. I wrote A-level work at Pepperdine, and many research papers as a Political Science and Government major. Finally, the direct evidence of my Bar Exam essays is the key piece of evidence in my petition. There is

simply no way around the fact that my essays are not sub-par and were deemed "very thorough" "on track" and "would not think they are 2s or 3s" by a leading expert in the field of Bar Exam grading, and the Director of Academic Achievement at Oklahoma City University School of Law, Professor Steven Foster. Therefore, a clerical error is not only possible, but highly likely and warranted an investigation and a regrade in my specific case. Further, this action, which was clearly warranted, was arbitrarily and capriciously denied by the State agency, and no reasoning whatsoever was provided as to why no action was taken.

Furthermore, my Bar Exam essays demonstrate a level of competence that is inconsistent with the very low scores I received on my writing section. Candidly, per the NCBE unofficial rubric and guidance, as my original petition discusses, a score of a 4 is merely an 'average' score, not an Einstein level of analysis. A 4 '*usually*' has a '*fairly complete* understanding of the *facts, legal issues*, and the *applicable principles of law*, in a *satisfactorily* written paper'. A 5 is merely an '*above average* score'. Both scores utilize similar language in the rubric of '*fairly well*' indicating they are not actually that far from one another. Conversely, a 3 indicates that '. . . on balance, the essays are *inadequate*'. A 2 is described as a "below average answer that is *significantly flawed*". Once more, these lower scores are not representative of my work. In summary, the official scaled written score of 117.8 suggests either an omitted task or clerical discrepancy rather than an authentic performance deficiency.

Additionally, I would be remiss to not mention that the OKBBE Director was instructed by my Bar Exam Professor that the Board of Bar Examiners were welcome to reach out to him to provide critical feedback on my Bar Exam essays, and that the School of Law was backing the petition. In fact, I was privy to the fact that a conversation between Professor Foster and the Director of the OKBBE had occurred in which Mr. Foster directly encouraged the Director to

8

relay the message to the Board members that he hoped that they would consider the petition given the quality of my exam essays and practice essay performance throughout bar preparation.

## PRAYER FOR RELIEF

In conclusion, I respectfully submit a humble and earnest prayer for relief in the form of reversal of the decision made by the OKBBE on the grounds that it was an abuse of discretion. This abuse of discretion is due to the fact that its nonaction could not have been based on the facts or evidence provided in the record of the clerical error petition, and or the facts and evidence were simply not even considered at all which has prejudiced my admission to the esteemed State Bar of Oklahoma. While the Board is granted discretion in evaluating applications, such discretion is not boundless. Where the record contains uncontroverted evidence of a potential error in scoring or record-keeping, the Board's refusal to even investigate constitutes an abuse of discretion and falls squarely within the arbitrary and capricious standard set forth in 75 O.S. § 320.

Governmental agencies have certainly been given a sizable amount of deference in the recent past, but perhaps less in this legal context as it relates to the Supreme Court's oversight of the OKBBE. Nonetheless, courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority. "When a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."[4]

---

[4] *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 35 (2024)

9

Here, the delegation of authority to the OKBBE to further the goal of regulating the legal profession as it relates to the admission of applicants is both ambiguous in this case and unambiguous. On the one hand, Rule 12 of the Rules Governing Admission of the OKBBE grants clear authority to investigate such matters and an arguable mandatory duty. On the other, it is unclear whether Rule 12 should apply to a petition for clerical error. Yet in this case–where the petition is supported by circumstantial, empirical, institutional, and anecdotal evidence–Rule 12 must be construed to apply. To hold otherwise would permit the OKBBE to act arbitrarily and capriciously by disregarding clear and convincing evidence presented in good faith. Being as it were, it is, therefore, up to the Supreme Court of Oklahoma to do what it does best: judicial review. It is the fundamental role of the Supreme Court of Oklahoma to elucidate this opaque area of law in which undoubtedly there are many applicants who have been in this position without the courage to report this to the Court. Nonetheless, this lack of courage does not mean that it is not happening, and certainly does not mean that guidance in this area is not needed–especially when the OKBBE's discretion on this matter should never be abused as it prejudices otherwise qualified applicants from receiving their due after, years, months, and hours of preparation for what all attorneys have in common and share in an unbreakable bond, the Bar Exam.

Oklahoma law suggests that state courts use a de novo standard in administrative law appeals, meaning they must interpret the law independently, rather than completely deferring to an agency's interpretation. If the statute, or rule in this case, is deemed ambiguous regarding the OKBBE's authority to investigate petitions for clerical error, it would seem appropriate for this Court to interpret such ambiguity narrowly considering this law. Where an agency's statutory authority is unclear, deference is unwarranted according to the Oklahoma Administrative

Procedure Act, and ambiguity in this specific legal context should likewise be resolved in favor of preserving the Court's supervisory role over governmental agencies created under its authority. Therefore, this established state law and the *Loper Bright* decision handed down by the United States Supreme Court should be persuasive authority here in which the quasi-agency of the OKBBE has interpreted their authority to be boundless, such that they may even take no action and give no reasoning as to why a petition with credible evidence regarding a likely clerical error with the institutional backing of a law school was summarily denied.

Therefore, I earnestly pray that the Supreme Court of Oklahoma will reverse the adverse order rendered against me which lacks any rational basis. Ideally this reversal will take the form of a regrade or a grant of admission given the clear and convincing evidence of my original clerical error petition presented to the OKBBE. However, any relief granted by the Court is prayed for and would be appreciated more than I can possibly articulate. The flourishing of the individual cannot be stamped out by blind deference to bureaucratic processes which are arbitrary and capricious thereby infringing on one's individual liberty to write the script of one's life free from tyranny.

Thank you so very much for your kind consideration of my appeal of the OKBBE's final order in this matter. I humbly pray for any relief the Court may deem appropriate.

Respectfully submitted,

*Reagan Berry Poteet*
943 Rock Canyon Dr. Duncanville, TX 75137
Reagan.poteet@alumnimail.pepperdine.edu | (214) 914-1195
*Pro Se Petitioner*

11